## Case No. 2,454.

### CARROLL v. GAMBRILL et al.

[1 MacA. Pat. Cas. 581.]

Circuit Court, District of Columbia. Sept. 1858.

PATENTS—CLAIM OF PRIOR INVENTION—ESTOPPEL —PUBLIC POLICY—ABANDONMENT—SALES PRIOR TO APPLICATION.

[1. One who recommends an invention to others. distributes circulars inviting inspection, and disclaims all interest therein or claim thereto, is thereafter precluded, on grounds of public policy, from claiming a priority of invention.]

[2. Such a claim would be likewise barred, within the principles of the patent laws, on the ground of abandonment.]

[3. Ignorance of the patentability of the invention would not aid him if the importance of the improvement was obvious and apparent from observation of its operation.]

[4. Section 7 of the patent act of 1839 (5 Stat. 354), providing that a patent shall be invalid where sales were made more than two years prior to the application therefor. refers to sales by the applicant or those claiming under him, and not to sales made by persons claiming prior invention.]

[Appeal from the commissioner of patents.]

[On interference. Controversy between David Carroll and H. N. Gambrill and S. F. Burgee as to priority of the invention for which letters patent No. 18,124, for self-stripping cotton cards, were issued to Gambrill and Burgee, September 1, 1857. The commissioner of patents decided against the claim of Carroll, and from that decision he appeals.]

Munn & Co., for appellant.
A. B. Stoughton, for appellees.

MORSELL, Circuit Judge. The invention claimed in this case, it is conceded, is the same for which a patent issued to the said H. N. Gambrill and S. F. Burgee, dated the 1st of September, 1857 (No. 18,124). The issue in this case involves the question whether the said David Carroll has a right to have a patent therefor by reason of priority. He dates his invention in August, 1856. The appellees show theirs to be in November of the same year; and that in the December next following they filed their caveat in the patent office. The parties took their proof according to the rules of said office, and thereupon (after hearing the parties) the commissioner decided against the claim of the said David Carroll, which decision, with the reasons of appeal, evidence, and all the original papers, has been duly laid before me on this appeal. The said parties appeared; and having laid before me their respective written arguments, the case was submitted; upon a careful examination whereof the ground upon which my opinion will be placed will be the evidence relating to the conduct of the appellant in connection with his own declarations and admissions or confessions. It will be unnecessary, therefore, to take a particular notice of any other parts of the reasons of appeal or of the report of the commissioner.

In November, 1856, the appellees' machine, with the new feature constituting the invention, the subject of controversy in this case, was put up and worked in their mill, situated about the distance of a mile from that of appellant's. During that time, and for some time before, there was a constant intercourse between the parties and their workmen. or some of them. They (the appellees) filed their caveat 22d December, 1856. In the following March they applied for their patent, which was allowed. but not then delivered, but was issued the 1st September, 1857. On the 1st June, 1857. the appellees issued their printed circular. inviting manufacturers to visit the Atlantic Delaine Mills, Providence, Rhode Island, to witness the operation of a section of said appellees' patented self-stripping cotton cards then in operation. In further description, the circular says: "These machines are very simple in their construction, and require much less care to operate them than cards constructed in the ordinary way; they require no labor, except what is necessary to supply them with material; will do as much work and of as good quality as four of the common kind of cards of corresponding width," &c.. giving a further description. Some time before the middle of June, Mr. Carroll. having gone on to Providence, Rhode Island, visited said mills (the Atlantic Delaine), where the said card containing said new feature was in operation. (being the same claimed in this case as his

invention,) distributed some of the said circulars. and commended the said card in very high terms. Being questioned whether he was interested, declared that he had no interest therein. He laid no claim to it as his invention. And so, in traveling throughout the manufacturing districts of the North, the witnesses prove he distributed the said printed circulars recommending to manufacturers to visit Providence and see Gambrill and Burgee's machines at the delaine mills, assuring them that they would not regret it; and to those who desired to know whether he was interested, constantly declared that he was not, which facts are proven by a number of witnesses. as will appear by reference to the proceedings, but most conclusively so by the letter of Mr. Carroll to H. N. Gambrill, dated 10th June, 1857, in which, among other things, he says he went to Willimantic; there (he says) "I found Jillson," etc. "I gave him your circular, and said all to him I could in favor of your card." From thence he went to Haden's and gave Haden a circular. and told him he (Carroll) was not interested in the card. When at Palmer, he told Mr. Brown that he ought to have "your [meaning Gambrill and Burgee's] card built." And so to Mr. Haden, he called it "your card." This is the very thing now in issue. (See the letter itself. an exhibit in the proceedings.) This conclusion, from these facts, it appears to me, shuts up Mr. Carroll from all claim for a patent for said invention. The rule of law which I take to be applicable is, that in a case like this, where admissions are made to induce others to act upon them, such admissions do not operate merely as presumptive evidence of the actual truth of the facts, which must give way to positive proof of the contrary, but precludes and, as it were, estops the party on grounds of policy. I think it is a bar also upon the principles of patent law, upon the ground of abandonment. This, I understand, would be conceded if the case would not fall within the exception or saving contained in one of the provisions of the act of congress of 1839 [5 Stat. 354]. § 7. This exception. I think, would not apply to the case, being intended only for cases where the sale or license, &c., has been made by the applicant for a patent, or those claiming under him. This is not one of that class of cases.

The explanation offered as a defense— namely, ignorance—I do not think sustained. As to the fact of the feature, or the thing forming a part of the card as an important improvement, especially to a man skilled in such devices, it must have been plain and obvious; more especially is it to be reasonably supposed, as he was recommending the card as something new, and the invention said to be a simple one. But if not from the card itself, as stated in the circular, yet surely it must have been apparent to him when he saw it in operation. As to his not knowing whether it was patentable or not, the rule is that ignorance of the law does not excuse, especially in a matter of such little complication.

My opinion is that the decision of the commissioner is correct, and ought to be affirmed.